## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **LUIS AVELAR and MATEO GOMEZ,** individually and on behalf of all similarly-situated persons, | ) ) ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Case No. 3:22-cv-00292** |
| | ) | **Judge Aleta A. Trauger** |
| **HC CONCRETE CONSTRUCTION GROUP, LLC, AND JON HARRIS,** | ) ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Before the court is the Motion for Conditional Certification of This Matter as a Collective Action and Approval of 29 U.S.C. § 216(b) Notice ("Certification Motion") (Doc. No. 15) filed by plaintiffs Luis Avelar and Mateo Gomez. As set forth herein, the motion will be granted in part and denied in part.

## I.     FACTS AND PROCEDURAL BACKGROUND

### A.     The Pleadings

On April 22, 2022 the plaintiffs filed their Collective and Class Action Complaint on behalf of themselves individually and "all others similarly situated." (Doc. No. 1, at 1.) They seek to bring a collective action under the Fair Labor Standards Act ("FLSA") based on alleged violations of that statute, as well as a class action under Rule 23 of the Federal Rules of Civil Procedure, asserting state law claims for fraud, unjust enrichment, and conversion, against defendants HC Concrete Construction Group, LLC ("HC Concrete") and its owner, Jon Harris.

More specifically, as relevant to their FLSA claims and the Certification Motion, the plaintiffs allege that HC Concrete "depends on the labor of several hundred hourly-paid construction workers, including Plaintiffs, who are given various job titles including foremen,

carpenters, and rodbusters," and that these hourly workers are "purposefully misclassif[ied] as 'independent contractors' in order to deprive them of the overtime pay to which they are lawfully entitled under the FLSA, as well as other critical benefits and protections to which they are entitled" under federal and state law. (Doc. No. 1 ¶¶ 4–5.) The plaintiffs bring this lawsuit on behalf of themselves and "other current and former hourly construction workers who were misclassified as 'independent contractors,'" "pursuant to the collective action provisions of the FLSA," 29 U.S.C. § 216(b), to redress violations of their right to overtime wages as provided by 29 U.S.C. § 207(a).

Named plaintiff Luis Avelar was employed by HC Concrete from February 2021 through March 2022. (Doc. No. 1 ¶ 10.) Plaintiff Mateo Gomez was employed by HC Concrete as an hourly worker from September 2021 through April 2022. (*Id.* ¶ 14.) Avelar and Gonzalez allege that they regularly worked ten or more hours per day, six days per week, and rarely, if ever, were able to take an uninterrupted thirty-minute lunch break. (Doc. No. 1 ¶ 48.) The plaintiffs allege that, because the defendants purposefully misclassified them as "independent contractors" who fell outside the protections of the FLSA, they were deprived of overtime compensation to which they were entitled under the FLSA. (*Id.* ¶¶ 11, 15.) The plaintiffs also allege that all other hourly paid construction workers, including those who have filed Consents to join this lawsuit (seventeen to date, in addition to the two named plaintiffs) worked similar schedules—typically ten or more hours per day, six days per week, only rarely taking uninterrupted half-hour lunch breaks—and were similarly misclassified as independent contractors and deprived of overtime compensation to which they were entitled under the FLSA. (*Id.* ¶¶ 37–38, 49, 72.) The plaintiffs allege that, at all relevant times, they and other similarly situated individuals were "employees" of HC Concrete and Jon Harris, as that term is defined by 29 U.S.C. § 203(e)(1); they were paid an hourly wage with no overtime compensation; they regularly worked more than forty hours per week; they were covered by the minimum wage and overtime provisions of the FLSA, 29 U.S.C. §§ 206, 207; and

they were deprived of overtime pay to which they were entitled. (Doc. No. 1 ¶¶ 18, 19.)

HC Concrete is a Tennessee limited liability company with its principal place of business in Nashville, Tennessee. (*Id.* ¶ 20.) The Complaint contains allegations that, if true, would establish that both HC Concrete and defendant Harris qualify as "employers" for purposes of the FLSA and that the defendants together operated an enterprise engaged in interstate commerce with an annual gross sales volume in excess of $500,000. (*Id.* ¶¶ 24–28, 30–34.) The plaintiffs allege that the court has subject matter jurisdiction over the FLSA claims and that venue in this district is proper. (*Id.* ¶¶ 35–36.)

In support of their claim that they were actually employees, rather than independent contractors, the plaintiffs specifically allege that: (1) the defendants exercised control over the plaintiffs' and other hourly employees' work schedules, supervised their work, and controlled the method and manner in which they performed work; (2) neither the plaintiffs nor similarly situated hourly employees had any opportunity for profit or loss based on their skill or the outcome of any project on which they worked; (3) they were employed full-time; (4) they had a continuing relationship with the defendants, rather than one that ended with the conclusion of a particular project on which they were working; (4) they were not engaged in highly skilled work; (5) the work they performed was "an integral part of the Defendants' routine daily construction operation"; and (6) the defendants provided all equipment and materials necessary for the plaintiffs to perform their jobs. (*Id.* ¶¶ 39–46.)

The defendants have filed an Answer denying that the plaintiffs or any other independent contractors were improperly classified and denying that the plaintiffs are owed overtime compensation. The defendants admit that they employed some individuals as employees rather than independent contractors and that these employees were covered by the FLSA and, as such, are entitled to overtime compensation. The defendants admit generally that HC Concrete is an "employer" covered by the FLSA, that the court has subject matter jurisdiction over the plaintiffs'

FLSA claims, and that venue in this jurisdiction is appropriate. They deny violations of the FLSA and further deny that this case is appropriate for treatment as a collective action. (Doc. No. 11.)

### B.    The Certification Motion

The plaintiffs' Certification Motion requests that the court "oversee the joinder of additional opt-in plaintiffs" and "conditionally certify this matter as a collective action." (Doc. No. 15, at 1.) In particular, they request an order:

> (1) conditionally certifying this case to proceed as a collective action under the FLSA on behalf of all current and former hourly-paid construction workers who worked for HC Concrete, and who were classified as independent contractors (the "putative opt-in plaintiffs") at any time since July 28, 2019 (three years prior to the date the plaintiffs filed the Certification Motion);

> (2) requiring the defendants to immediately provide plaintiffs' counsel with the names, last known home addresses, email addresses, and telephone numbers of all putative opt-in plaintiffs (which includes additional, reasonable and diligent steps to locate and provide to plaintiffs' counsel the actual last known home addresses and email addresses for all putative opt-in plaintiffs, including those in which defendants' records list HC Concrete's office address as the home address or contain no address at all);

> (3) directing plaintiffs' counsel to issue plaintiffs' proposed Notice and Consent forms to all putative opt-in plaintiffs by mail and email (in both English and Spanish), which, among other things, would notify the putative opt-in plaintiffs that they have ninety days within which to submit signed consent to join the lawsuit;

> (4) requiring the defendants to internally post plaintiffs' proposed Notice and Consent forms (in both English and Spanish) prominently at HC Concrete's office location and at all of HC Concrete's job sites during the entire proposed ninety-day opt-in period;

> (5) requiring the defendants to enclose the Notice and Consent forms (in both English and Spanish) with the next regularly scheduled paycheck for putative opt-in plaintiffs who are currently working for the defendants;

> (6) directing plaintiffs' counsel to issue the proposed Reminder Notices to all putative opt-in plaintiffs who have not opted in the lawsuit or otherwise responded during the first forty-five days of the ninety-day opt-in period;

> (7) directing the defendants to enclose the Reminder Notice (in both English and Spanish) with the next regularly scheduled paycheck for putative opt-in plaintiffs who are currently working for the defendants and who have not opted into the lawsuit or otherwise responded during the first 45 days of the 90-day opt-in period; and

(8) tolling the statute of limitations with respect to the FLSA claims of the putative opt-in plaintiffs from July 28, 2022, to the close of the period during which the putative opt-in plaintiffs may join this action.

(*See* Doc. No. 15, at 3.) With their Certification Motion, the plaintiffs filed their proposed Notice and Consent forms, proposed Reminder Notice, and the Declarations of Luis Avelar, Harding Blackman, and Gena Wray.

In their Memorandum in support of the Certification Motion, the plaintiffs acknowledge that "a few" of the defendants' hourly construction workers were classified by HC Concrete as employees, but they maintain that most, including the plaintiffs and the putative opt-in plaintiffs, were improperly classified as independent contractors. The independent contractors, moreover, allegedly performed work identical to that of the hourly workers who were classified as employees. (Doc. No. 16, at 3; Doc. No. 15-3, Avelar Decl. ¶¶ 3–5; Doc. No. 15-4, Blackman Decl. ¶¶ 5–7; Doc. No. 15-5, Wray Decl. ¶¶ 6–7.) The hourly workers classified as independent contractors, including the plaintiffs, purportedly worked ten hours per day or more, six days per week, but were not paid overtime compensation. (Avelar Decl. ¶¶ 5, 14; Wray Decl. ¶¶ 8, 10.) The Declarations filed by the plaintiffs further support their allegations that the defendants established the schedules of the hourly paid construction workers classified as independent contractors and told them where and when to report to work each day. At the job sites, the workers were allegedly supervised by superintendents who assigned them to projects and told them how to perform their work, when they could take lunch breaks, and when they could leave. (Avelar Decl. ¶ 11; Blackman Decl. ¶ 12; Wray Decl. ¶ 11.) In addition, according to the plaintiffs, the hourly rate of pay for workers classified as "independent contractors," including the plaintiffs and putative opt-in plaintiffs, is set by the defendants and is not based on their skill or the outcome of any given HC Concrete project on which they were working. (Avelar Decl. ¶ 12; Blackman Decl. ¶ 13; Wray Decl. ¶ 9.) HC Concrete furnishes certain safety gear to the workers classified as independent contractors but charges the cost of such gear back through payroll deductions. Other than this safety gear, HC

Concrete furnishes all other equipment and materials necessary for the workers classified as independent contractors to complete the projects to which they are assigned. (Avelar Decl. ¶ 13; Blackman Decl. ¶ 14.)

The plaintiffs assert that conditional certification of a collective action is appropriate under 29 U.S.C. § 216(b). They also maintain that, in addition to simply ordering the defendants to produce the names and contact information for putative opt-in plaintiffs for notice purposes, the court should require the defendants to conduct a diligent investigation to provide accurate information relating to the putative opt-ins. In support of this demand, the plaintiffs rely on the Declaration of Gena Wray, who was briefly employed by HC Concrete as Office Manager in early 2022. Wray attests that she was tasked with "cleaning up and organizing HC Concrete's business practices, including its recordkeeping and reporting to state and federal governmental agencies." (Wray Decl. ¶¶ 2, 12.) In attempting to perform this task, she purportedly discovered that HC Concrete's records were "a mess," that much of its bookkeeping is or was done manually, in paper form, and contains many errors and omissions. (Wray Decl. ¶¶ 12–13.) Wray states that she discovered that many of the 1099 forms for workers classified as independent contractors reflected HC Concrete's office address rather than the workers' home addresses. (Wray Decl. ¶ 13.) She also allegedly became aware that HC Concrete employs over 350 construction workers classified as "independent contractors" at any given time and that such workers were improperly classified, based on her understanding of the law. (Wray Decl. ¶ 14.)[1] Based on Wray's Declaration, the plaintiffs argue that the court should require the defendants to "conduct a diligent investigation and inquiry to not only provide the last known home addresses and email addresses of putative opt-in plaintiffs" currently in the defendants possession, but also require them to take "*additional*,

---

[1] Wray also alleges that, shortly after she attempted to bring to the attention of HC Concrete's management and defendant Harris specifically the fact that the construction workers were being improperly classified, she was terminated for not being a "good fit." (Wray Decl. ¶ 16.)

reasonable and diligent steps" to verify the actual home address and email address for each putative opt-in plaintiff for whom the defendants' records either contain no home address or list HC Concrete's office address as the worker's address. (Doc. No. 16, at 14.)

The plaintiffs presume that many, if not most, of the putative opt-in plaintiffs are Hispanic and speak little English. They rely on that presumption and the defendants' allegedly poor recordkeeping to support their argument that the court should authorize a ninety-day period within which putative opt-in plaintiffs can submit a signed Consent and should equitably toll the statute of limitations until the expiration of that ninety-day period.

The defendants have filed a Response in opposition to the Certification Motion. They argue that: (1) the evidence does not support the plaintiffs' assertion that they are similarly situated to members of a proposed collective; (2) if the court is inclined to conditionally certify a collective, court-supervised notice is unnecessary; (3) if the court is inclined to supervise the notice process, the defendants object to the forms and procedures proposed by the plaintiffs; and (4) equitable tolling is not warranted. (Doc. No. 19.) With their Response, the defendants filed the Declaration of Jon Harris and both redlined and clean versions of their proposed changes to the plaintiffs' proposed Consent and Notice forms. (Doc. Nos. 19-1 through 19-5.)

In his Declaration, Harris asserts that HC Concrete has approximately 350 hourly construction workers at any given time, including both employees and independent contractors. (Doc. No. 19-1, Harris Decl. ¶¶ 8–9.) He contends that HR Concrete maintains hard copy records of the information provided by new construction workers when they are hired. (Harris Decl. ¶ 15.) He also asserts that, since the filing of this lawsuit, he has "received reports about people showing up at the HC Concrete worksites and soliciting construction workers to join this lawsuit." (Harris Decl. ¶ 16.) He states that Gena Wray works for a competitor company and that Harding Blackman was fired from HC Concrete for fraudulent misconduct. (Harris Decl. ¶¶ 13–14.)

The plaintiffs filed a Reply and supplemental Declarations to address arguments raised in

the defendants' opposition to their Certification Motion. (Doc. Nos. 22 and exhibits.)

## II.     LEGAL STANDARD

The FLSA permits employees alleging a violation of the statute to sue on their own behalf as well as on behalf of other "similarly situated" employees. The statute reads, in pertinent part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover [for such] liability . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). This provision establishes two requirements for a representative action: (1) plaintiffs must "actually be 'similarly situated'"; and (2) they must "signal in writing their affirmative consent to participate in the action." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006).

While the FLSA does not define "similarly situated," the Sixth Circuit has held that plaintiffs are similarly situated if they "suffer from a single, FLSA-violating policy" or if their "claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 398 (6th Cir. 2017) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016)). The plaintiff bears the burden of establishing that the members of the putative class are similarly situated. *Comer*, 454 F.3d at 546.

Although the Sixth Circuit has never expressly mandated or approved this procedure, it has recognized that the district courts "typically bifurcate certification of FLSA collective action cases," *Monroe*, 860 F.3d at 397, into a "two-phase inquiry," *Comer*, 454 F.3d at 546, as first

developed in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 352 (D.N.J. 1987).[2] The first stage, the "notice stage," "takes place at the beginning of discovery." *Comer*, 454 F.3d at 546. At this stage, the court determines whether conditional certification of a collective is appropriate and whether notice of the suit should be distributed to other employees who may be similarly situated. *Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742, 747 (M.D. Tenn. 2018). To satisfy his burden of proof at this stage, a plaintiff must show that his "position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546–47 (citation omitted). The district courts applying this standard have characterized it as "fairly lenient," requiring only a "modest factual showing" that the named plaintiff and potential co-plaintiffs are similarly situated with respect to the conduct alleged in the complaint. *Crosby*, 348 F. Supp. 3d at 746. The district courts have repeatedly stated that they do "not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations" at this stage. *Id.* at 747 (quoting *Roberts v. Corr. Corp. of Am.*, No. 3:14-cv-2009, 2015 WL 3905088, at *10 (M.D. Tenn. Jun. 25, 2015); *Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. 641, 642 (W.D. Tenn. 2009)). This lenient standard "typically results in conditional certification of a representative class" at the first stage of the class certification process. *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012) (quoting *Comer*, 454 F.3d at 546). However, "[a]t the notice stage, the certification is conditional and by no means final." *Comer*, 454 F.3d at 546. At the second stage, after discovery, the defendant may move to decertify a conditional class. *Martinez v. First Class Interiors of Naples, LLC*, No. 3:18-CV-00583, 2022 WL 1462965, at *5 (M.D. Tenn. May 6, 2022) (citing *Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1072 (M.D. Tenn. 2015)).

---

[2] *See Holder v. A&L Home Care & Training Ctr., LLC*, 552 F. Supp. 3d 731, 741 (S.D. Ohio 2021) ("Our circuit, it is true, does not appear to have expressly adopted *Lusardi*, although the circuit has acknowledged that district courts use the bifurcated certification framework.").

III.    **DISCUSSION**

A.      **Whether to Conditionally Certify a Collective Action**

The plaintiffs seek the court's authorization to provide notice of this lawsuit to all "current and former hourly-paid construction workers who worked for HC Concrete Construction Group, LLC, and who were classified as 'independent contractors' at any time since July 28, 2019." (Doc. No. 16, at 1.) In support of this motion, the plaintiffs argue that they have met the "relatively slight" burden of "making a modest factual showing" to support their claims that the defendants violated the FLSA by improperly classifying hourly paid construction workers as independent contractors, all of whom held identical or substantially similar positions, and failing to pay them the required overtime compensation for all hours over forty worked in a given workweek. (Doc. No. 16, at 10–11 (citing *Comer*, 454 F.3d at 547).) The plaintiffs argue that the allegations in their Complaint and the Declarations of Avelar, Wray, and Blackman are sufficient to satisfy the requirement that they make a "modest factual showing" of the existence of a "similarly situated class of hourly-paid construction workers who were misclassified as 'independent contractors' and denied overtime pay." (Doc. No. 16, at 12.)

The defendants oppose conditional certification, first, on the basis that the plaintiffs have not presented sufficient evidence that HC Concrete has a common plan or policy of "classifying all of its construction workers as independent contractors." (Doc. No. 19, at 5.) They point out that, in their Complaint, the plaintiffs alleged that "defendants classified ***all*** of its hourly paid construction workers . . . as 'independent contractors,'" but they "admit" in their Certification Motion and Memorandum that "a few of the hourly-paid construction workers were and are classified by HC Concrete as employees.'" (Doc. No. 19, at 5–6 (citing Doc. No. 1 ¶ 37; Doc. No. 16, at 3).) The defendants contend that this "admission" that HC Concrete did not classify *all* of its hourly workers as independent contractors establishes that the defendants did not have a

"common policy or plan" that would make the plaintiffs similarly situated to a collective of putative opt-in plaintiffs. (Doc. No. 19, at 6.)

Second, the defendants argue that each plaintiff's claims will "require consideration of individualized issues of liability and damages." (Doc. No. 19, at 5.) In particular, they contend that, under the multi-factor "economic realities test" the Sixth Circuit employs to determine whether a worker is properly considered an independent contractor, the court would be required to undertake an "individualized analysis . . . to determine whether each [worker] is an independent contractor or employee for FLSA purposes," and that such an individualized analysis "precludes class certification." (Doc. No. 19, at 6 (quoting *Demauro v. Limo, Inc.*, No. 8:10-CV-413-T-33AEP, 2011 WL 9191, at *3 (M.D. Fla. Jan. 3, 2011)).)

The defendants are correct that courts have denied conditional certification of FLSA collectives on the basis that the determination of whether each putative plaintiff was properly classified as an independent contractor would require an individualized analysis contrary to the purposes of conditional class certification. *Demauro*, 2011 WL 9191, at *4. In *Demauro*, however, the plaintiffs presented declarations that showed little more than that each of the declarants "(1) worked for Defendants as a sedan driver; (2) was classified as an independent contractor or 'owner/operator'; and (3) was not paid overtime compensation." *Id.* at 3. Here, in contrast, the plaintiffs have offered evidence that a large number of the defendants' hourly-paid construction workers are classified as independent contractors; that the putative opt-in plaintiffs are or were classified as independent contractors (even if some workers, who would not be members of the collective, are classified as employees); that they perform work identical to the work performed by individuals classified as employees; that the manual labor they perform does not involve highly skilled work and is an essential and integral part of HC Concrete's operations; that the defendants establish the work schedules and duties of the workers classified as independent contracts, direct their work, tell them when they may take breaks or leave for the day, and furnish all materials

necessary for the performance of their jobs; and that the hourly pay rate is set by the defendants and is not based on their skill level or the outcome of any given HC Concrete project. The plaintiffs have also offered evidence that many of them are Hispanic with little comprehension of English.

Similarly situated does not mean identical. *Comer,* 454 F.3d at 546–47. And the Supreme Court has acknowledged that a plaintiff may pursue claims on behalf of a collective when he shows that his claims and those of the putative collective are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). No discovery has been conducted in this case, and the court finds that the plaintiffs have carried their relatively slight burden of making a modest factual showing that their position is similar to that of the putative members of the collective and that they all suffer from a "single FLSA-violating policy"—that the defendants knowingly misclassified them as independent contractors and deprived them of overtime pay to which they were entitled under the FLSA.

It remains to be seen whether the plaintiffs' factual allegations are true, but they are sufficient to warrant granting conditional certification at this stage.

### B. Whether the Court Should Supervise Notice

In addition to objecting to conditional certification and the provision of notice to the putative opt-in plaintiffs, the defendants contend that court-supervised notice is not necessary "in light of Plaintiffs' access to the proposed collective action members and their counsel's direct contact with potential plaintiffs." (Doc. No. 19, at 8.) They contend, in the alternative, that plaintiffs' counsel should be required to disclose the identities and contact information of persons to whom they have already sent notice and that court-supervised notice should only issue to those persons who have not already received notice of the lawsuit through the plaintiffs or their agents. (*Id.*) Based on the plaintiffs' submission of seventeen signed Consents with their Complaint, the

defendants posit that it is "reasonable to infer" that they have sent Notice and Consent forms to others as well. (*Id.* at 9.) They also point to Jon Harris's Declaration stating that he has been informed of "people visiting HC Concrete jobsites" for the purpose of "recruit[ing] construction workers to sign consent forms." (*Id.*; *see* Harris Decl. ¶ 16.) They also point to a reference in the plaintiffs' proposed Notice that they have already set up a website through which individuals can opt-in by completing a Consent form online. (*See* Doc. No. 15-1, at 4.)

The plaintiffs dispute the factual basis for the defendants' suggestion that court-supervised notice is unnecessary. Martin Holmes, an attorney for the plaintiff, has submitted a Declaration attesting that, while plaintiffs' counsel have conferred with the two named plaintiffs and a "few former 'independent contractors' who inquired about their legal rights," plaintiffs have not sent Notice or Consent forms to anyone. (Doc. No. 22, at 5; Doc. No. 22-3, Holmes Decl. ¶ 4.) Holmes attests that plaintiffs' counsel do not know the identity of any putative class members other than those for whom they have provided signed Consents. (Holmes Decl. ¶ 4.) Plaintiffs and their counsel also deny visiting HC Concrete jobsites or requesting or directing anyone else to do so, and they disclaim any knowledge of anyone visiting jobsites to recruit workers to sign Consents. (Doc. No. 22, at 6; Holmes Decl. ¶ 5.) They also note that the website referenced in the proposed Notice is not actually operational yet and, in any event, is not designed to publicize notice. (Holmes Decl. ¶ 6.)

The court finds that the defendants have offered no actual evidence to support their assertion that the plaintiffs have short-circuited the notice procedure or that they have reasonable access to the proposed members of the collective without the cooperation of the defendants, such that court-supervised notice would serve no purpose. In the absence of such evidence, court-supervised notice is appropriate in this case.

### C.      The Scope and Content of the Notice

In 1989, the Supreme Court "confirm[ed] the existence of the trial court's discretion" to facilitate notice to potential plaintiffs but did not provide "the details of its exercise." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Since then, the Court has provided "no further guidance regarding the notice-giving process." *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 436 (5th Cir. 2021). However, as *Swales* points out, the only two mandates embraced by the FLSA and the Supreme Court are (1) that "only those 'similarly situated' may proceed as a collective" and (2) that, "while a district court may 'facilitat[e] notice to potential plaintiffs' for case-management purposes, it cannot signal approval of the merits or otherwise stir up litigation." *Id.* (quoting *Hoffmann-La Roche*, 493 U.S. at 169).

The defendants raise a number of specific objections to the content and format of the plaintiffs' proposed Notice and Consent forms, many of which appear reasonable at first blush. In response, the plaintiffs suggest that the court order the parties to confer and file agreed Notice and Consent forms within seven days of entry of the court's granting of conditional certification. The court agrees with this proposal and further notes that micro-management of the minute details of the proposed forms is not an appropriate use of the court's resources.

However, to facilitate the parties' cooperation with each other in drafting and submitting revised forms, the court makes the following findings:

> (a) Rather than the ninety days requested by the plaintiffs, the court finds that a sixty-day notice period is appropriate in this case. *Accord York v. Velox Express, Inc.*, 524 F. Supp. 3d 679, 694 (W.D. Ky. 2021); *see also Johnston v. J&B Mech., LLC*, No. 4:17-CV-00051-JHM, 2017 WL 3841654, at *4 (W.D. Ky. Sept. 1, 2017) (granting sixty-day opt-in notice because "district courts in the Sixth Circuit routinely order the 60 day opt-in period to commence from the date of mailing the notice and consent forms to putative plaintiffs"). In light of the shortened timeframe, a reminder notice will not be necessary. However, if the plaintiffs have as much difficulty as they anticipate contacting putative opt-in plaintiffs due to the defendants' alleged poor recordkeeping, they may move to extend the notice period.
>
> (b) The court will authorize notice by first-class U.S. Mail and email. *Accord York*, 524 F. Supp. 3d at 695 (noting that "a growing number of courts have authorized

dual notification" (at least to former employees) as it may "advance[] the remedial purpose of the FLSA [by] increas[ing] the likelihood that all potential opt-in plaintiffs will receive notice of the lawsuit, and of their opportunity to participate" (citations omitted)). The defendants' objection to notice via email is unreasonable and unrealistic in this day and age.

The court will not order notice by posting at the defendants' jobsites or with putative opt-in plaintiffs' paychecks. Again, however, if the plaintiffs have as much difficulty as they anticipate in contacting putative opt-in plaintiffs due to the defendants' allegedly poor recordkeeping, the plaintiffs may file an expedited motion to require the defendants to post notice at HC Concrete jobsites and/or to include notice with paychecks to putative members of the collective.

(c) The defendants will be directed to produce to plaintiffs' counsel within twenty-one days a list containing the names, last-known addresses, last-known telephone numbers, and last-known email addresses for all putative opt-in plaintiffs. The defendants will only be required to produce such information as is in their possession. *Accord Garcia Ramos v. DNC Food Serv. Corp.*, No. 19-CV-2967 (VSB), 2020 WL2832776, at *10 (S.D.N.Y. June 1, 2020) ("Defendants must produce all the contact information requested by Plaintiffs that can be extracted from their records, but are not required to produce information they do not have."). The plaintiffs have the option of requesting additional information, such as dates of birth and social security numbers, in the event that the defendants cannot provide mailing addresses or if a significant number of notices are returned undelivered. In addition, the plaintiffs have the option, in that event, of requesting that the court also reconsider whether to require the defendants to post notice at HC Concrete jobsites if the defendants lack email addresses and telephone numbers for putative opt-in plaintiffs. *Accord Garcia Ramos*, 2020 WL 2832776, at *10.

## D.     Equitable Tolling of the Statute of Limitations

The plaintiffs also ask the court to equitably toll the statute of limitations applicable to their FLSA claims for potential opt-in plaintiffs from July 28, 2022, the date the plaintiffs filed the Certification Motion, until the close of the period during which the putative opt-in plaintiffs may join the action. The defendants object to this request.

FLSA actions must be commenced within two years of the cause of action or, if the action arises from a willful violation, within three years after accrual. 29 U.S.C. §255(a). A new cause of action accrues with the receipt of each paycheck that fails to properly include pay for overtime wages. *Betts v. Cent. Ohio Gaming Ventures, LLC*, 351 F. Supp. 3d 1072, 1075 (S.D. Ohio 2019)

(citing *Viciedo v. New Horizons Comput. Learning Ctr. of Columbus, Ltd.*, 246 F. Supp. 2d 886, 902 (S.D. Ohio 2003)).

For FLSA collective actions, filing the complaint "commences" an "action" only as to the party plaintiffs and any other individual claimants who file a written consent to become party plaintiffs on the same date the complaint is filed. 29 U.S.C. § 256(a). For any other putative plaintiff, the action does not "commence" until such individual submits to the court a written consent to join the collective action. *Id.* § 256(b). As a result, the statute-of-limitations clock continues to run—and unpaid-compensation claims may continue to shrink—for each putative member of the collective until that individual consents to join the suit. The FLSA's opt-in mechanism necessarily contemplates a "lapse of time between the date a collective action is commenced and the date that each opt-in plaintiff files his or her consent form." *Baden-Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 826 (S.D. Ohio 2007).

Congress, however, has never explicitly prohibited the federal judiciary from equitably tolling the statute of limitations in FLSA cases. *Id.* Generally, the doctrine of equitable tolling is read into every federal statute, and the decision to grant equitable tolling "lies solely within the discretion of the trial court." *Id.* (citing *Truitt v. Cty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)). Although the Sixth Circuit grants equitable tolling sparingly, *Amini v. Oberlin Coll.*, 259 F.3d 493, 500 (6th Cir. 2001), it has found equitable tolling appropriate in FLSA actions, *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 188 (6th Cir. 2008).

The Sixth Circuit has identified five factors as relevant to the consideration of whether equitable tolling should be applied in a particular case:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Hughes*, 542 F.3d at 187 (citations omitted). This list "is not necessarily comprehensive, and not all factors are relevant in all cases." *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (citation omitted); *see also Dixon v. Gonzales*, 481 F.3d 324, 331 (6th Cir. 2007) (holding equitable tolling appropriate where plaintiff did not meet three of the five factors). The Sixth Circuit has "emphasized that absence of prejudice is a factor to be considered only after a factor that might justify tolling is identified." *Allen*, 366 F.3d at 401–02 (internal quotation marks and alteration omitted). "Typically, 'equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Baden-Winterwood*, 484 F. Supp. 2d at 826 (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561–62 (6th Cir. 2000))

District courts within this circuit have often concluded that equitable tolling is improper when potential opt-in plaintiffs have not yet been identified or notified. *See Betts v. Cent. Ohio Gaming Ventures, LLC*, 351 F. Supp. 3d 1072, 1075 (S.D. Ohio 2019) (collecting cases). On the other hand, courts have applied equitable tolling when delays in the issuance of notice have arisen from circumstances beyond the control of existing or potential plaintiffs. *See, e.g.*, *Thompson v. Direct Gen. Consumer Prods., Inc.*, No. 3:12-CV-1093, 2014 WL 884494, at *8 (M.D. Tenn. Mar. 5, 2014) (finding that a fifteen-month delay in ruling on a certification motion, due to both "aggressive motion practice and the Court's heavy docket" and through no fault of the existing or potential plaintiffs, was an "extraordinary circumstance that strongly supports equitable tolling"). In *Thompson*, the court weighed the relevant factors and the length of, and reason for, the delay and granted equitable tolling from the date the certification motion was fully briefed until the date the order granting the motion was entered. *Id.* at *11.

The court finds that a period of equitable tolling is warranted in this case. First, it is clear that most potential opt-in plaintiffs, particularly those no longer employed by the defendants, have had no actual or constructive notice of the case or the filing requirement. Diligence is not

particularly relevant, where the potential opt-in plaintiffs lack such notice. *Accord id.* at *8 ("The exercise of reasonable care or diligence would not have made putative class members aware of this case or the operation of the FLSA's limitations period on their claims. . . . [T]he failure of potential opt-in plaintiffs who lacked knowledge of this action to opt into it, quite sensibly, does not indicate a lack of diligence. The measure of diligence is whether a potential opt-in plaintiff joined a collective action when given the opportunity."). Likewise, the potential opt-in plaintiffs' ignorance of the filing deadline, particularly in light the suggestion that many of them have limited English-language proficiency, weighs in favor of tolling. *See id.* at *9 ("The Court concludes that absent actual notice or some plausible means to learn of the tick-tock of the FLSA clock, Plaintiffs' ignorance of the filing deadline is reasonable.").

As for prejudice to the defendants, the defendants have had actual knowledge of the lawsuit since it was filed in April 2022, and they have a better idea than do the plaintiffs of the number of individuals potentially affected by a ruling in this case. Moreover, the defendants do not argue that they would suffer prejudice from tolling the statute of limitations.

In addition, a not-insignificant period of time has passed because the court strayed from its preferred practice of ruling expeditiously on fully briefed motions, particularly certification motions. The present motion was fully briefed on September 9, 2022. Some additional delay will be occasioned simply due to the issuance of this Memorandum and accompanying Order during the holiday season and accompanying office closures and vacation schedules. The court finds it appropriate to toll the running of the statute of limitations for those individuals who have not opted into the lawsuit from September 23, 2022—the earliest date by which the court could have been expected to address the motion—until the earlier of (1) the date on which a signed Consent is filed for any individual opt-in plaintiff and (2) the close of the sixty-day period during which the putative opt-in plaintiffs may join the action.

## IV. CONCLUSION

For the reasons set forth herein, the Certification Motion will be granted in part, subject to the shortening of the notice period and the other modifications identified herein and to the parties' agreeing on the content and format of the proposed Notice and Consent forms. An appropriate Order is filed herewith.

_____

ALETA A. TRAUGER
United States District Judge