## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| **LUIS AVELAR and MATEO GOMEZ,** individually and on behalf of all similarly-situated persons, | ) ) ) |  |
|  | ) |  |
| **Plaintiffs,** | ) |  |
|  | ) |  |
| **v.** | ) | **Case No. 3:22-cv-00292** |
|  | ) | **Judge Aleta A. Trauger** |
| **HC CONCRETE CONSTRUCTION GROUP, LLC, AND JON HARRIS,** | ) ) |  |
|  | ) |  |
| **Defendants.** | ) |  |

## MEMORANDUM

Before the court is the plaintiffs' Motion for Class Certification ("certification motion"), which specifically seeks an order (1) certifying as a class action the claims of plaintiffs and putative class members for fraud and misrepresentation (Count Two of the Complaint), conversion (Count Three), and unjust enrichment (Count Four); (2) designating the named plaintiffs and their counsel as the class representatives; (3) requiring the defendants to provide the plaintiffs the names, addresses (physical and e-mail), cell phone numbers and/or telephone numbers of all class members; and (4) directing the issuance of notice to class members pursuant to Federal Rule of Civil Procedure 23(c)(2) in both Spanish and English. (Doc. No. 50.) The defendants oppose the motion and, in the alternative, request modification of the class definition. (Doc. No. 53.) The plaintiffs have filed a Reply in further support of the certification motion, in which they agree in part with the defendants' proposed modification of the class definition but otherwise contest the defendants' arguments in opposition to certification. (Doc. No. 58.)

For the reasons set forth herein, the court will accept in part and reject in part the defendants' proposed modification of the class definition and will grant the certification motion for a class defined in accordance with the accepted modification.

## I.    BACKGROUND

Defendant HC Concrete Construction Group, LLC ("HC Concrete") is a privately owned company that provides commercial concrete contracting services primarily in the Nashville, Tennessee area. (Doc. No. 1 ¶ 21; Doc. No. 53-1, Harris Decl. ¶¶ 4–5.) It was formerly owned by defendant Jon Harris, who also functioned as its President. Harris sold the company in January 2024 but remains employed by the company. (Doc. No. 1 ¶ 24; Harris Decl. ¶¶ 2–3.)

Named plaintiffs Luis Avelar and Mateo Gomez are former employees of HC Concrete who were allegedly misclassified as "independent contractors," were paid on an hourly basis, and regularly worked more than forty hours per week but were not paid overtime. (Doc. No. 1 ¶¶ 9–11.) Avelar worked for HC Concrete from approximately February 2021 to March 2022, and Gomez worked for HC Concrete from approximately September 2021 to April 2022. (*Id.* ¶¶ 10, 14.) HC Concrete deducted amounts to cover workers' compensation insurance premium payments from their weekly paychecks. (*See* Doc. Nos. 15-3 (Avelar paystubs), 51-2 (Gomez paystubs).) Their total pay was reduced by 6–9%, purportedly to reimburse HC Concrete for their *pro rata* portion of the cost of workers' compensation insurance. (*See id.*; *see also* Doc. No. 15-3, Avelar Decl. ¶¶ 1–8.)

The plaintiffs filed their Collective and Class Action Complaint (Doc. No. 1) in April 2022, asserting a claim for violations of the Fair Labor Standards Act on behalf of a collective group of similarly situated current and former employees of HC Concrete, as well as state law claims on behalf of a putative Rule 23 class comprised of the same group of current and former HC Concrete employees. The court previously granted the plaintiffs' motion for conditional certification of the

collective action and for the provision of notice to potential opt-in plaintiffs, for purposes of the FLSA claims. (Doc. No. 25.) The FLSA claims are premised on allegations that the defendants misclassified the named plaintiffs and other similarly situated workers as independent contractors when they should have been classified as employees and, as a result, deprived them of overtime pay to which they were entitled under the FLSA. (Doc. No. 1 ¶ 6.) The defendants have not sought reconsideration of the conditional certification, and the deadline for doing so has now passed. (*See* Doc. No. 48.)

For purposes of their state law claims, the plaintiffs further allege that the defendants unlawfully deducted from their paychecks the supposed cost of workers' compensation insurance premiums. The plaintiffs assert, first (and accurately), that, insofar as they were misclassified as independent contractors, it is illegal under Tennessee law for the defendants to deduct from their paychecks any part of the workers' compensation insurance premium. *See* Tenn. Code Ann. § 50-6-405(d). Based on these allegations, the plaintiffs lodge claims for conversion and unjust enrichment to recover the amounts unlawfully deducted from their pay. Second, the plaintiffs allege that, even if they were not misclassified as independent contractors, the defendants either failed to provide workers' compensation insurance for such independent contractors at all or grossly overcharged them for such insurance. Based on this alternative theory, the plaintiffs bring a state law claim for fraud/misrepresentation.

For purposes of all three of their state law claims, the plaintiffs' certification motion seeks certification of a class defined as:

> All current and former hourly paid construction workers who worked for HC Construction Group, LLC, and who were classified as "independent contractors" at any time since April 22, 2019 (the 'Class Period').

(Doc. No. 51, at 1.) They maintain that they have satisfied the prerequisites for class certification under Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy

of representation. They also assert that they have satisfied the requirements of Rule 23(b)(3)—predominance and superiority. In the alternative, they assert that they have, at a minimum, established that they should be permitted to bring a class action "with respect to particular issues" under Rule 23(c)(4). (Doc. No. 51.)

In response, the defendants argue that the plaintiffs cannot establish the commonality and typicality elements required under Rule 23(a) or predominance under Rule 23(b)(3). They also take issue with the plaintiffs' proposed definition of the class. Specifically regarding the plaintiffs' fraud claims, the defendants assert that the plaintiffs' allegations that they failed to maintain, or overcharged for, workers' compensation insurance are "demonstrably false or wholly unsupported" and, further, that the fraud claim is not suitable for certification because "the alleged misrepresentation[s]" pertaining to the procurement of workers' compensation insurance would have been made by "different employees on different occasions . . . on an individual basis for each Class Member at different times over many years." (Doc. No. 53, at 16.) Finally, in the alternative, the defendants assert that the court should, at a minimum, modify the proposed class definition.

The plaintiffs have filed a Reply in which they agree, in part, with the defendants' proposed modification to the class definition but otherwise that they have met their burden of establishing the necessary elements for class certification. (Doc. No. 58.)

## II.    LEGAL STANDARDS

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "In order to justify a departure from that rule, 'a class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members.'" *Id.* at 348–49 (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). Rule 23 of the Federal Rules of Civil

Procedure incorporates that requirement and others that must be met in order for a court to certify a class. Rule 23(a) has "four requirements—numerosity, commonality, typicality, and adequate representation—[that] effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Id.* at 349 (citations and internal quotation marks omitted).

In addition to the four requirements of Rule 23(a), the putative class must satisfy at least one of the requirements of Rule 23(b). Rule 23(b)(3) is considered to be the most flexible of the 23(b) pathways, as it "allows class certification in a much wider set of circumstances" than (b)(1) or (b)(2). *Wal-Mart*, 564 U.S. at 362. This greater flexibility, however, is counterbalanced by "greater procedural protections." *Id.* A court may certify a class under Rule 23(b)(3) only if it "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are often distilled to the terms "predominance" and "superiority."

Because Rule 23(b)(3) is "[f]ramed for situations in which class-action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2) situations," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (citation and internal quotation marks omitted), courts have a "duty to take a 'close look' at whether common questions predominate over individual ones." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (quoting *Amchem*, 521 U.S. at 615) (some internal quotation marks omitted). "Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions." *Amchem*, 521 U.S. at 609; *see also Comcast Corp.*, 569 U.S. at 34 (observing that "[t]he same analytical principles govern Rule 23(b) [and Rule 23(a)]" but that "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)"). "What

matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (citation omitted; ellipsis and emphasis in original)). The "superiority" requirement aims to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23 adv. comm. n. to 1966 amend.).

Rule 23(b)(3) lists four non-exhaustive factors "pertinent" to the "predominance" and "superiority" analyses:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).

Finally, while the question of whether a class may be appropriately certified is separate from whether the putative class will succeed on the merits, at times it may be "necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Comcast*, 569 U.S. at 33 (citations and internal quotation marks omitted). In addition, "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* (citations and internal quotation marks omitted). "Such an analysis will frequently entail 'overlap with the merits of the plaintiff's underlying claim.'" *Id.* at 33–34 (quoting *Wal-Mart*, 564 U.S. at 351). "That is so because the 'class determination generally

involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Id.* at 34 (quoting *Wal-Mart*, 564 U.S. at 351). This rigorous analysis is not, however, a "license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

## III. DISCUSSION

### A. Modification of the Class Definition

District courts "must be vigilant to ensure that a certified class is properly constituted" and, therefore, have "broad discretion to modify class definitions." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). The defendants request modification of the plaintiffs' proposed class definition.

The plaintiffs' motion originally requested certification of a class defined as:

> All current and former hourly paid construction workers who worked for HC Construction Group, LLC, and who were classified as "independent contractors" at any time since April 22, 2019 (the 'Class Period').

(Doc. No. 51, at 1.) The defendants maintain that, if a class is permitted to proceed, it should be limited to

> All current and former hourly-paid construction workers who worked for defendant HC Concrete and who were classified as independent contractors [and had money deducted from their paychecks for workers' compensation insurance premiums] at any time [between] September 23, 2019 [and August 13, 2022.]

(Doc. No. 53, at 18.)

The plaintiffs do not object to the inclusion of language limiting the class definition to cover individuals who "had money deducted from their paychecks for workers' compensation insurance premiums." (Doc. No. 58, at 4.) The court agrees this modification is necessary and appropriate.

The defendants do not explain their proposed modification of the commencement date from April 22, 2019 to September 23, 2019, and the plaintiffs object to it. As the plaintiffs correctly point out, their state law claims are all subject to a three-year statute of limitations,[1] and they filed suit on April 22, 2022, making timely any claim that accrued within the three years prior to that date. Moreover, the claims of any putative class members are tolled as of that date as well, at least until (or unless) the court denies a motion for certification. *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974). The court rejects the defendants' proposed modification that would add a commencement accrual date of September 23, 2019.[2]

In support of their proposed cut-off date of August 13, 2022, the defendants argue that their policy changed as of that date and that they stopped requiring reimbursement of workers' compensation insurance premiums from independent contractors as of that date. (*See* Doc. No. 53, at 4 (citing Doc. No. 53-2, Andrews Decl. ¶ 7).) The plaintiffs object to this cut-off date on two bases. First, the plaintiffs maintain that the defendants have produced no evidence verifying this change, aside from the single line in Andrews' Declaration, and have refused to produce any pay records from after that date, making it impossible for the plaintiffs to confirm that HC Concrete did indeed stop deducting the cost of workers' compensation insurance premiums from independent contractors' paychecks as of that date. Second, they point out that inclusion of this

---

[1] *See* Tenn. Code Ann. § 28-3-105(1) (providing three-year limitations period for "[a]ctions for injuries to personal or real property," which the Tennessee courts have held applies to actions for fraud, *Vance v. Schulder*, 547 S.W.2d 927, 931–33 (Tenn. 1977); *Hulan v. Coffee Cty. Bank*, No. M2018-00358-COA-R3-CV, 2019 WL 354870, at *3 (Tenn. Ct. App. Jan. 28, 2019)); *id.* § 28-3-105(2) ("[a]ctions for the detention or conversion of personal property"); *id.* § 28-3-105(4) ("[a]ctions for . . . unjust enrichment").

[2] The defendants apparently chose that date because the court determined, based on the amount of time it took to rule on the fully briefed Motion for Notice, that opt-in plaintiffs' claims were tolled for a period of time for purposes of their FLSA claims. (*See* Doc. No. 24, at 18.) But that holding has no bearing on the timeliness of the class claims.

date in the class definition is unnecessary if the definition is modified to exclude any workers who did not have workers' compensation premiums deducted from their paychecks, because, if the defendants are correct, then "the period following August 13, 2022 would be excluded" by definition. (Doc. No. 58, at 4.)

In light of the modification of the class definition to encompass specifically only those individual construction workers classified as independent contractors who had workers' compensation premiums deducted from their paychecks, the court finds that the inclusion of the August 13, 2022 cut-off date is unnecessary. Accordingly, for purposes of considering the Motion for Certification, the court adopts the following class definition:

> All current and former hourly paid construction workers who worked for HC Construction Group, LLC at any time since April 22, 2019, were classified as "independent contractors," and had money deducted from their paychecks for workers' compensation insurance premiums.

### B.  Rule 23(a)(1)–Numerosity

Specifically regarding the numerosity requirement, the plaintiffs must demonstrate that the putative class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[W]hile there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement." *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006). The Sixth Circuit has not specifically identified what qualifies as a "substantial number," but it has found a class of 35 sufficient to meet this standard. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996)).

Here, it is apparently undisputed that HC Concrete has projects worth "tens of millions of dollars" under contract in the Nashville area, with dozens of active job sites and hundreds of construction workers employed at any given time, most of whom were classified as "independent contractors." (Doc. No. 15-5, Wray Decl. ¶ 4; Doc. No. 15-4, Blackman Decl. ¶ 4; Doc. No. 22-2,

Supp. Wray Decl. ¶ 2; Doc. No. 53-1, Harris Decl. ¶ 6.) Based on defendants' having provided contact information for nearly 1000 individuals who worked as hourly-paid construction workers from September 23, 2019 to April 10, 2023 (the date of production), and evidence that HC Concrete typically employs more than 300 hourly-paid construction workers at any given time, the plaintiffs posit that it is reasonable to assume that the total number of class members (going back to April 22, 2019, or three years before the Complaint was filed) would be over 1,000.

In light of the evidence to support this number and the defendants' failure to contest it, the court finds that the plaintiffs have readily satisfied the numerosity requirement.

### C.     Rule 23(a)(1)–Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interest of the class." For this element to be satisfied, the court must "determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562–63 (6th Cir. 2007) (citation omitted). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* at 562 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). In addition, "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* (quoting. *Amchem Prods.*, 521 U.S. at 626); *see also id.* 563 ("Class representatives are adequate when it appear[s] that [they] will vigorously prosecute the interests of the class through qualified counsel, which usually will be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members.").

As for the adequacy of representation, the plaintiffs have submitted the Declaration of attorney Martin Holmes, who attests to the qualifications as well as the vast experience and success

he and other members of the plaintiffs' legal team have had in pursuing, and defending against, class action lawsuits. Holmes avers that he and his co-counsel have the resources to successfully prosecute this lawsuit and are committed to the vigorous pursuit of the matter to trial and, if necessary, appeal. (Doc. No. 51-1, Holmes Decl. ¶¶ 2–12.)

Holmes also attests that the named plaintiffs share a common interest with the putative class members, as they seek to prove that the defendants misclassified them and hundreds of other employees as independent contractors and illegally deducted a percentage of their wages. The plaintiffs have produced documents titled "Duties of Class Representatives" that are signed by the named plaintiffs, confirming that they have received the document, understand the duties of a class representative, understand the case and the claims asserted, have participated and will continue to participate in the prosecution of this case, and are committed to protecting the interests of class members. (Doc. No. 51-1, at 12, 13.)

The defendants do not contest this element of Rule 23, and the court finds that the plaintiffs have established the adequacy of representation in this case.

### D. Rule 23(a)(2) & (3) and 23(b)(3)—Commonality, Typicality, and Predominance

The commonality requirement is satisfied if the plaintiffs establish common questions of law or fact, the resolution of which will "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see id.* ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." (citation omitted; alteration in the original). "The predominance requirement is met if [the common questions are] at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (citing *In re Am. Med. Sys.*, 75 F.3d 1069, 1080 (6th Cir. 1996)). The Sixth Circuit has observed that, "[t]o satisfy

the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124–25 (6th Cir. 2016) (quoting *Beattie*, 511 F.3d at 564). "A class may be certified based on a predominant common issue even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020) (internal quotation marks and citation omitted).

"To satisfy the typicality requirement, the representative plaintiff's interests must be aligned with those of the class." *Powers*, 501 F.3d at 618 (citing *Sprague v. GMC*, 133 F.3d 388, 399 (6th Cir. 1998) (en banc)). "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996).

### 1. The Conversion and Unjust Enrichment Claims

The plaintiffs allege that they and all class members were misclassified as independent contractors and that a portion of their wages was illegally deducted from their pay checks to cover the cost of workers' compensation insurance. They assert that the question of whether they were misclassified as independent contractors and should have been classified as employees instead presents a common question and that the answer to this question will also resolve the question of whether the deduction of any portion of their wages to cover the cost of workers' compensation insurance was improper.

The plaintiffs also posit that common questions of fact establish that they and the other construction workers employed by HC Concrete should have been classified as employees.

Specifically, they contend that, irrespective of their job titles, the work they performed was relatively unskilled manual labor; the work they performed was identical to that of workers who *were* classified as employees;[3] they worked full-time, with no opportunity to perform work for any other employer at the same time; HC Concrete established their schedules, telling them when and where to report to work each day; while they were at work, they were under the direct supervision of HC Concrete Superintendents, who instructed and directed them on how to perform their work, if and when they could take lunch breaks, and when they could leave work at the end of their shifts. The plaintiffs and class members were paid an hourly rate, and their rate of pay was set by the defendants. It was not based on any profit or loss reflecting their skill or the outcome of the particular project on which they were assigned to work. Aside from certain required safety gear, which was issued by HC Concrete but charged to the plaintiffs and class members through payroll deductions, HC Concrete supplied all the equipment and materials necessary for the plaintiffs and class members to perform their jobs. (*See* Doc. No. 15-3, Avelar Decl. ¶¶ 10–14; Doc. No. 15-4, Blackman Decl. ¶¶ 4–6, 8; Doc. No. 15-5, Wray Decl. ¶¶ 5–11.) The plaintiffs assert that, based on these common facts, it was incorrect to classify them as independent contractors and, therefore, illegal for the defendants to pass on to them the cost of workers' compensation insurance coverage. (Doc. No. 1 ¶¶ 94–95, 110–12.)

In their Response in opposition to certification, the defendants first argue that the commonality and typicality requirements are not met because "not all Class Members had money

---

[3] In a Supplemental Declaration, former HC Concrete Office Manager Gina Wray testified that hourly paid construction workers classified as independent contractors literally work side-by-side with those classified as employees, performing the exact same work, and that the decision whether to classify an employee as an independent contractor was "based solely on whether the individual could provide paperwork and documentation for HC Concrete to complete the E-Verify enrollment process and the I-9" for purposes of verifying the individual's identity and authorization to work in the United States. (Doc. No. 22-2, Wray Supp. Decl. ¶¶ 3–4.)

deducted from their paychecks for workers' compensation premiums." (Doc. No. 53, at 11.) They point to the plaintiffs' admission that the sampling of payroll records produced in discovery show that partial payroll records produced in discovery show that 46 of the 52 opt-in plaintiffs had premiums deducted from their paychecks but the other 6 did not. (*See* Doc. No. 51, at 5.)[4] This objection is obviated by the modified class definition, which includes only those independent contractors who opted to participate in HC Concrete's workers' compensation policy and had workers' compensation premiums deducted from their paychecks.

The defendants also assert that the plaintiffs cannot establish commonality and typicality, because "not all Class Members were misclassified as independent contractors." (Doc. No. 53, at 12.) Without presenting any evidence to counter that of the plaintiffs, they argue that resolution of the misclassification question requires an "individualized inquiry" that will differ from worker to worker, based on consideration of the multi-factor "economic realities test" courts employ to determine whether each worker was misclassified. (*Id.*) They argue that the predominance requirement is not met for the same reason: that the court will "need to determine whether each Class Member was truly misclassified as an independent contractor." (*Id.* at 15.) The defendants also maintain that, while variations in the amount of damages to which individual class members might be entitled is not "in and of itself, fatal to certification," the fact that the court would need to perform "significant damages analyses" for each class member, "[a]long with the individualized misclassification analysis," makes it all the more "apparent that the individual issues predominate

---

[4] According to the defendants, HC Concrete hourly workers who were classified as independent contractors were given the option of securing their own workers' compensation coverage or participating in HC Concrete's policy and having their portion of the premium deducted from their paychecks. (Doc. No. 53-2, Andrews Decl. ¶ 4.) The majority opted to participate in HC Concrete's policy. (*Id.* ¶ 5.)

in this matter," rendering the case "inappropriate for class certification under Rule 23(b)(3)." (*Id.* at 14, 15–16.)

Both parties point to caselaw that supports their respective positions as to whether class certification is appropriate when the primary issue to be resolved is whether the plaintiffs (and putative class members) were improperly classified as independent contractors. Generally, "[i]n cases where plaintiffs claim that defendants have misclassified potential class members as independent contractors, rather than employees, commonality is satisfied if the plaintiffs' employment status is a common question capable of being answered through classwide proof." *Griffith v. Fordham Fin. Mgmt., Inc.*, No. 12 CIV. 1117 PAC, 2015 WL 1097327, at *3 (S.D.N.Y. Mar. 12, 2015) (internal quotation marks and citation omitted). What this means in practice is that class certification is typically denied when proof as to significant variations in class members' experiences has been adduced, thus establishing as a factual matter that individualized assessments of each class member's situation will be required in order to resolve the employer/independent contractor question.

In *Griffith*, for example, the court found that the misclassification question would require an individualized inquiry where, among other variations, (1) although the plaintiffs claimed that they worked a fixed schedule established by the defendants rather than at their own convenience, the proof established wide variation in the actual hours and even the number of days worked; (2) the method of compensation varied among class members, with some paid on commissions, some paid a daily rate, and some paid a combination of commissions plus a daily rate; (3) some individuals had signed employment contracts and others had not; and (4) there was varying testimony as to the degree of control exercised by the defendants over the putative class members' day-to-day responsibilities. *Id.* at *3–4. The court found that, even if the plaintiffs could establish

the "commonality" requirement, the evidence of variability in the amount of control the defendant exercised over the plaintiffs, combined with individualized damages, was fatal to the "predominance" question. *Id.* at *5. *Accord, e.g.*, *David v. Bankers Life & Cas. Co.*, No. C14-766RSL, 2015 WL 3994975, at *7 (W.D. Wash. June 30, 2015) (finding that the plaintiffs established the existence of several "common issues and common evidence suggesting a common answer" across several factors of the "economic-dependence test" applicable under Washington law to the classification issue, but that the plaintiffs could not establish predominance where there was evidence of substantial variation as to the amount of control exercised by the employer over the individual workers); *Saleem v. Corp. Transp. Grp., Ltd.*, No. 12 CIV. 8450 JMF, 2013 WL 6061340, at *5 (S.D.N.Y. Nov. 15, 2013) (denying class certification based on the necessity of an individualized assessment of whether the putative class members—"black car" drivers—were properly classified as independent contractors, where there was "contradictory evidence" as to whether some of the putative class members owned their own vehicles, maintained their own vehicles, had private customers, and drove for other companies).

Conversely, courts have granted certification in misclassification cases where "[t]he claims brought by Plaintiffs and by the putative class members are predicated on the same course of conduct in which Defendants are alleged to have engaged," and "the same factual and legal theories underline both the claims of the named Plaintiffs and the putative class members." *Hogan v. Cleveland Ave. Rest., Inc.*, 690 F. Supp. 3d 759, 785 (S.D. Ohio 2023). That standard was satisfied in *Hogan*, where the plaintiffs' position was that "all members of the putative class were misclassified by Defendants as non-employee 'entertainer tenants' pursuant to a common scheme" that was devised by, promoted by, and/or adhered to by each of the defendants. *Id.* at 784–85. *Accord Villalpando v. Excel Direct, Inc.*, 303 F.R.D. 588, 606, 608 (N.D. Cal. 2014) (finding that

"the question of whether Plaintiffs are independent contractors or employees of Exel is susceptible to classwide treatment because of Exel's uniform policies and practices as to its drivers" and that the commonality and predominance factors were met where all drivers were required to sign a contract that largely spelled out the degree of control that would be exercised by the defendant, and the defendant did not "dispute that these policies are the same for all class members"); *accord Prinzo v. Hannaford Bros. Co.*, 343 F.R.D. 250, 253 (D. Mass. 2023); *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 184–85 (S.D. Ohio 2012).

In this case, the plaintiffs have presented proof that, although some workers were classified as employees, the classification decision was based solely on the workers' ability to present the appropriate work authorization documentation. (Wray Supp. Decl. ¶ 4.) Otherwise, the plaintiffs have presented evidence that HC Concrete applied a uniform policy regarding supervisors' control over the construction workers' work, the scheduling, the number of hours worked, the method of pay, and the furnishing of equipment, among other things, and that this policy was identical as to both employees and those construction workers classified as independent contractors. The defendants have not presented any countervailing evidence suggesting that the determination of whether putative class members were misclassified as independent contractors will be subject to individualized proof based on factors unique to each worker. Instead, they simply posit that the misclassification question is *always* subject to individualized inquiry. Such "speculation and surmise," however, are not sufficient to "tip the decisional scales in a class certification ruling." *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016) (citation omitted).

In Tennessee, whether an individual is an employee or an independent contractor for purposes of workers' compensation coverage is a question of law governed by the factors set forth

in Tenn. Code Ann. § 50-6-106. *Cont'l Cas. Co. v. Theraco, Inc.*, 437 S.W.3d 841, 848–49 (Tenn. Ct. App. 2014). These factors include the employer's right to control the work, the right to terminate, the payment method, the worker's ability to select and hire helpers, whether the employer or the worker furnishes tools and equipment, the worker's ability to set his own hours, and his ability to work for other entities. Tenn. Code Ann. § 50-6-106(10)(D)(i). No single factor is determinative, and the most important is the employer's "right to control the conduct of the [individual's] work." *Cont'l Cas. Co.*, 437 S.W.3d at 849 (citing *Lindsey v. Trinity Commc'ns, Inc.*, 275 S.W.3d 411, 419 (Tenn. 2009)). The court does not need to resolve the question on the merits at this juncture—that is not the focus of a Rule 23 inquiry—but the plaintiffs have presented evidence that the answers to these questions will depend on an analysis of HC Concrete's policies and practices, rather than on the individualized application of those policies to individual workers. HC Concrete has presented no evidence to the contrary. It therefore seems clear, at this juncture, that resolution of the misclassification issue based on HC Concrete's policies will resolve the issue as to all potential class members—not just the named plaintiffs. In short, the issue of the defendants' liability for misclassifying the plaintiffs and the putative class members is subject to generalized proof. This is sufficient to establish the commonality and typicality elements of Rule 23(a).

The plaintiffs must also establish that the issues that are subject to generalized proof must "predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007). The defendants argue that the question of damages will require individualized analysis. The plaintiffs concede this point, but they argue persuasively that the computation of damages should involve a relatively straightforward analysis of HC Concrete's payroll records. Moreover, "[c]ommon issues may predominate when liability

can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.* (citation omitted). Here, the issue of liability on the conversion and unjust enrichment claims, which can be established by generalized proof, clearly predominates over the damages issue, which will require individualized proof.

### 2. Fraud Claim

The plaintiffs' fraud claim is not dependent upon whether they and the class members were misclassified. It is premised on the plaintiffs' allegations that, even assuming they were properly classified, HC Concrete either did not actually procure sufficient workers' compensation insurance to cover all of the independent contractors or it overcharged them for their portion of the premium.

The defendants argue, first, that the fraud allegations are "demonstrably false" and that the court should not even consider them in ruling on the certification motion. (Doc. No. 53, at 7.) The defendants acknowledge the declaration of former HC Concrete Supervisor Harding Blackman, who attests based on his personal observations that workers classified as independent contractors under his supervision were not covered by workers' compensation insurance and that, when they were injured on the job, they were instructed not to claim that the injury was work-related when seeking medical treatment. (Doc. No. 15-4, Blackman Decl. ¶ 11.) However, the defendants characterize Blackman's testimony as sweeping and conclusory, unsupported by specific examples of situations in which workers were instructed not to claim work-related injuries. They also have provided a summary of Blackman's criminal history and argue based on this history that his testimony is unworthy of credence. Finally, they claim that the testimony is directly contradicted by documents and testimony submitted by the defendants which, they claim, "clearly show that HC Concrete provided workers' compensation coverage for all of its workers (regardless of classification) dating back to its founding in February 2019" and that HC Concrete has submitted numerous claims for work-related injuries for workers classified as independent contractors over

the years. (Doc. No. 53, at 9 (citing Harris Decl. ¶¶ 10–13; Andrews Decl. ¶¶ 8–9).) According to HC Concrete, it relied on its insurance brokers' estimates when determining how much of the cost of coverage to charge back to each worker, and it ceased making any deductions as of August 13, 2022. (Harris Decl. ¶¶ 17–18; Andrews Decl. ¶ 7.)

Blackman's testimony is admittedly thin, but the impeachment of his credibility through his criminal records is a matter for the trier of fact (in this case, the jury), not the court. In addition, as the plaintiffs argued in their Reply, while HC Concrete has now (after the filing of the certification motion) produced some documents related to workers' compensation insurance, they have not produced documents showing:

> a) that HC Concrete had a workers' compensation policy(ies) in effect during the entire relevant time period from April 22, 2019, to the present; b) the amount of coverage; c) whether coverage applied to hourly-workers classified as independent contractors; d) the amount of workers' compensation premiums paid on behalf of independent contractors; or e) the total amount of deductions taken from the pay of independent contractors.

(Doc. No. 58-1, Holmes Supp. Decl. ¶ 4.) The documents they have produced, moreover, raise questions regarding whether HC Concrete actually carried insurance for all of its workers classified as independent contractors and as to whether it overcharged workers for the coverage. (*See id.* ¶ 5 (attesting, based on plaintiffs' counsel's inspection of the documents provided by HC Concrete, that HC Concrete appears to have significantly underreported its payroll in order to pay a smaller workers' compensation insurance premium, at least for some policy coverage periods, and that it appears to have paid from 3.91–5.25% of worker wages for coverage, while charging the workers 6–9% reimbursement).)

At this point in the proceedings, the court finds that the plaintiffs have presented sufficient evidence to support their allegations of fraud related to undercoverage and/or overcharging for workers' compensation insurance. To the extent there exist disputed questions of fact, these may

be resolved with further discovery, such that the defendants may establish that they are entitled to summary judgment on the fraud claim, but the court will not resolve factual disputes at this point in the proceedings.

Next, the defendants argue that, even if the court certifies a class with respect to the conversion and unjust enrichment claims, certification of the fraud claim is not warranted, because "Defendants allegedly made the alleged misrepresentations to each worker classified as an independent contractor by different employees on different occasions, the alleged misrepresentation would have been made, by necessity, on an individual basis for each Class Member at different times over many years." (Doc. No. 53, at 16 (citing Andrews Declaration ¶ 5).) The defendants assert that courts have regularly found, under similar circumstances, that "[c]lass action status is usually inappropriate where oral representations are relied upon to support fraud claims, due to the highly individualized nature of the statements." (*Id.* (quoting *Yadlosky v. Grant Thorton, L.L.P.*, 197 F.R.D. 292, 299 (E.D. Mich. 2000)).)

In this case, however, it is undisputed that, at least through August 2022, the defendants' representatives informed the workers classified as independent contractors that they were required to have workers' compensation insurance and that they could either procure it themselves or participate in HC Concrete's policy. The workers were told that, if they chose the latter option, their *pro rata* portion of the cost of workers' compensation insurance would be deducted from their weekly paychecks. The majority chose this option, and sums attributed to workers' compensation insurance were deducted from their paychecks. (Andrews Decl. ¶¶ 4, 6–7.) Thus, even though "coverage options were communicated to each worker classified as an independent contractor on an individual basis, by different HC Concrete representatives, and at different times" (*id.* ¶ 5), there is no suggestion that the information communicated to each worker varied

significantly from one representative to the next or from one worker to the next. Moreover, the information conveyed was either true or it was not. That is, either HC Concrete had sufficient workers' compensation insurance or it did not, and it either overcharged for it or it did not. The facts serving as the predicate for the fraud claim are identical for the plaintiffs and the putative class members. While, again, the damages issue will require individualized assessments, the fraud question will predominate, and liability will be based upon HC Concrete's policies and practices. This issue can be resolved on a class-wide basis. *Accord Young*, 693 F.3d 532, 544–45 ("Plaintiffs will have to prove their theory [regarding the defendants' process] at trial; but for class certification, this is a predominate issue central to each of Plaintiffs' claims and subject to generalized proof. And, of course, the district court would be free to revisit this issue at a later time if discovery shows that the [individual variation] unrelated to the Defendants' actions is more significant than it now appears.").

The plaintiffs have established numerosity, typicality, and predominance under Rule 23(a) and 23(b) for their fraud claim as well.

### E.    Rule 23(b)(3)—Superiority

To verify that a class action is superior to other methods of adjudicating the controversy, the court must consider the non-exhaustive factors listed in Rule 23(b)(3):

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D). "'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).

The defendants do not substantively contest the superiority of the class mechanism for resolving the plaintiffs' claims in this case, and the court finds this factor satisfied as well. It is clear based on the evidence presented thus far that many class members were short-term hourly workers, and the maximum recovery for each individual will be relatively small, making the pursuit of individual actions impracticable and improbable. *See Young*, 693 F.3d at 545 ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." (citation omitted)). In addition, it appears that many class members are not proficient in English, thus exacerbating the barriers to individual recovery. Under the circumstances, a class action is the superior method for pursuing the claims in this action.

## IV.    CONCLUSION

Finding that the plaintiffs have satisfied the requirements for certification set forth in Rule 23(a) and 23(b)(3), as set forth herein, the court will grant the plaintiffs' certification motion. Accordingly, the court will enter an order that (1) certifies the action as a class action with respect to Counts Two, Three, and Four of the Complaint; (2) defines the class; (3) approves the named plaintiffs as class representatives and appoints class counsel; (4) directs the defendants to provide plaintiffs with the names, addresses (physical and email), and cell phone numbers of all class members; and (5) directs the filing of a motion to approve the proposed notice to class members.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge